**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TOMIE KATHLEEN AVANT, | ) | Case No. 05-30657 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| TOMIE KATHLEEN AVANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 06-3015 |
| | ) | |
| SALLIE MAE SERVICING, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Once again, the Court is called upon to determine the difficult question of whether a debtor should receive a discharge of her student loan debts in a Chapter 7 bankruptcy proceeding.

Tomie Kathleen Avant, the Debtor, filed a complaint to determine the dischargeability of the student loans she owes to the Defendants, Sallie Mae and the U.S. Department of Education ("D.O.E."). The loans are sizeable – the Debtor owes Sallie Mae $84,914.57 and the D.O.E. $100,010.46. Together, these debts account for approximately 84% of the Debtor's total unsecured debt. The Debtor earns close to $35,000 a year as an attorney and has no dependents. Based on these facts alone, it might appear, at first blush, that repayment of these student loans would not likely impose an undue hardship on the Debtor.

However, at an evidentiary hearing on November 30, 2006, the Debtor testified that she has numerous medical conditions, the treatment of which imposes a substantial financial burden on her, and that this burden is only (barely) manageable as a result of the health insurance provided through her employer, the Department of Social Services of the State of Missouri. She further testified that she cannot obtain insurance on her own or through another employer, so she is stuck at her current job, which offers little opportunity for advancement. The Defendants did not offer any evidence controverting this testimony. The Defendants' attorneys *argued* that the Debtor could make more money and that she could afford to repay the loans by cutting her living costs or by giving up her

health insurance, but neither Defendant offered any actual evidence that there are higher paying jobs available to the Debtor that can provide her with the necessary health insurance. More basically, neither Defendant offered any clear evidence as to the payments that would be required to repay the loans. Although they alluded to flexible repayment options that *might* be available to the Debtor, neither Defendant offered evidence of what the Debtor's payments would be under those options.

For these reasons and the other reasons developed further below, the Court finds that under the "totality of circumstances" test for undue hardship applied in the Eighth Circuit, the student loans at issue in this proceeding are dischargeable under 11 U.S.C. § 523(a)(8).

## BACKGROUND

The Debtor graduated from the University of Tulsa Law School in December 1997. She funded her education there, at least in part, with student loans from Sallie Mae and the U.S. Department of Education. The current balances on those loans are now $84,914.57 and $100,010.46, respectively.

After graduation, the Debtor worked at a law firm in southwest Missouri where her salary peaked in 2003 at more than $78,000. In 2004, however, the Debtor began experiencing extensive medical problems, including diabetes and depression, and was forced to leave her job at the law firm because she was unable to get medical insurance, either through her employer or on her own. She could not afford all of the medical care she required – even on her $78,000 salary – and believed that she could not afford to be without insurance coverage.

After a considerable search, the Debtor was able to find an employer that could provide her with health insurance – the Department of Social Services of the State of Missouri. The tradeoff, however, was that her salary decreased significantly. The Debtor now makes $34,618, and she testified that she has little hope of getting a promotion or raise, beyond the occasional cost of living increase that is given to all state employees.

The Debtor's health has not improved. She continues to suffer from diabetes and depression, and she now suffers from arthritis and high cholesterol. The Debtor has had a hip and one knee replaced, and she needs to have the other knee replaced in the near future. The amount and proportion of treatment and prescription expenses appear to vary, but the evidence indicated that the Debtor spends $600-$900 a month to address her various medical conditions.

2

The Debtor's high medical expenses put the Debtor's modest monthly budget in the red. She makes $2,478 a month, but has $2,988 in expenses. She has no expense listed for cable television or other entertainment, and she spends a meager $250 a month on food. The only uncharacteristically high expense is $297 in donations ($247 for tithing and $50 for miscellaneous donations).

The Debtor's foreseeable future economic outlook is the same, if not worse. The Debtor testified that she has made significant efforts to find a higher paying job, but that her efforts are consistently thwarted by her inability to obtain health insurance through any other employer. On the expense side, the Debtor will likely need to replace her nine-year-old car in the not too distant future; it has around 150,000 miles on it, it has been in two accidents in the past year, and the Debtor has a long commute to work.

As mentioned above, not much is known about the specific terms of the loans at issue, other than the current balances. Counsel for Sallie Mae indicated that the payments on its loans would total about $500 a month but he also suggested that Sallie Mae would "probably" be willing to accept $300 a month. He also represented that the Sallie Mae loans accrue interest at approximately $2,700 a year. The Court has heard no evidence, however, regarding the payment terms of the D.O.E. loans. Counsel for D.O.E. stated that the Debtor was eligible for an income sensitive repayment plan and offered into evidence the provision of the Code of Federal Regulations setting forth the terms of that plan (the income contingent repayment plan or "ICRP"), but did not explain what the resultant payment would be for the Debtor under the ICRP.

## DISCUSSION

Under 11 U.S.C. § 523(a)(8), certain student loans are nondischargeable unless repayment of those loans would impose an undue hardship on the debtor or her dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor.[1] Unfortunately, the Code does not define the phrase "undue hardship;" its interpretation has been left to the courts. In this Circuit, undue hardship is determined by the application of a "totality of the circumstances"

---

[1] *In re Reynolds*, 425 F.3d 526, 529 (8th Cir. 2005); *Andrews v. South Dakota Student Loan Assistance Corp.* (*In re Andrews*), 661 F.2d 702, 704 (8th Cir. 1981).

test.[2]  Under this test, courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonably necessary living expenses of the debtor and the debtor's dependents; and (3) and other relevant facts and circumstances unique to the particular case.[3]  The principal inquiry is to determine whether the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt while still allowing for a minimal standard of living; if those resources are sufficient, the indebtedness should not be discharged.[4]

In this case, the Court finds that the expenses to which the Debtor testified, including her monthly medical expenses, are reasonable.  Deducting these expenses from her monthly income yields a deficit.  Consequently, the Debtor currently has no money, whatsoever, to pay her student loans.   Regardless of whether the monthly payment on the Sallie Mae loans is $300 or $500, and regardless of whether the Debtor qualifies for the ICRP or what the payments would be under the ICRP, the Debtor cannot currently repay anything on her student loans, and the Court could discharge the Debtor's student loans on this basis alone.[5]

The Court further finds that the Debtor cannot afford to pay anything on her student loans for the foreseeable future.  The Debtor is relatively young – 51 years old – but her health is not good and, unfortunately, it does not appear that her health is likely to improve any time soon.  Her prospects are limited at her current position, and, despite the D.O.E.'s suggestion to the contrary, there is no evidence that the Debtor could obtain a higher paying job that provides medical insurance.  Considering her already modest, if not Spartan, household budget, her financial condition is unlikely to improve as long as she continues to have high medical bills.  And going without medical insurance is not an option.

---

[2] *Reynolds*, 425 F.3d at 532;  *Long v. Educ. Credit Mgmt. Corp.* (*In re Long*), 322 F.3d 549, 554 (8th Cir. 2003);  *Andrews*, 661 F.2d at 704.

[3] *Long*, 322 F.3d at 554; *Ford v. Student Loan Guarantee Foundation of Arkansas*, 269 B.R. 673, 676 (B.A.P. 8th Cir. 2001).

[4] *Long*, 322 F.3d at 554.

[5] *See In re Lee*, 352 B.R. 91 (B.A.P. 8th Cir. 2006).  Assuming an interest rate of 6%, paying just the interest on the loans would require approximately $11,000 a year, or almost $1,000 a month.  That is nearly one-half of the Debtor's monthly net income.

The D.O.E. suggested at the hearing that the Debtor should consider higher paying jobs, such as her former job at the law firm where she made more than $78,000, regardless of whether she can obtain health insurance.  This suggestion is unacceptable in several respects.  First, it fails to appreciate that the Debtor's medical bills would far exceed any increase in her income from a new job, unless she made more than $100,000 more than she is currently making – the amount her insurance company paid toward her medical care in 2005.  While the Court has no reason to doubt that the Debtor is a capable attorney, there is no evidence before the Court indicating that there is a reasonable likelihood that she can obtain a job that pays that much.  Second, D.O.E.'s suggestion is socially and morally objectionable.  In essence, the D.O.E. is suggesting that repayment of her student loans is more important than having health insurance.  This translates to a suggestion that the Debtor should ignore her health, do without even minimal health care, become destitute maintaining her health, or throw herself on the mercy of private health care providers.  None of these options is acceptable to the Court.

## CONCLUSION

For the reasons stated above, the Court finds that denying discharge of the student loans at issue in this proceeding would impose an undue hardship on the Debtor.  Therefore, the Court will discharge those loans pursuant to 11 U.S.C. § 523(a)(8).

This opinion constitutes the Court's findings of fact and conclusions of law.  A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 21st day of December, 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Mark J. Schultz
Aaron W. Farber
Earl W. Brown, III